**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANNY DEWAYNE HOPPER,

    Plaintiff - Appellant,

v.

TODD FENTON; CITY OF
CLEVELAND, OKLAHOMA,

    Defendants - Appellees.

No. 16-5006
(D.C. No. 4:14-CV-00229-JED-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.
_____

The mothers of two young girls, L.M. (age eight) and K.G. (age twelve), reported to police that Danny Dewayne Hopper had sexually assaulted their daughters. Officer Todd Fenton interviewed the mothers and observed separate forensic interviews of L.M. and K.G. Both girls maintained that Mr. Hopper had raped K.G. in his bedroom, but their accounts differed on several other points. Officer Fenton drafted a probable cause affidavit to obtain a search warrant for Mr.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Hopper's home. Following the search, he arrested Mr. Hopper. Because Officer Fenton had not obtained an arrest warrant, the next day he drafted a second probable cause affidavit to support the arrest. Mr. Hopper was charged with first degree rape and lewd or indecent proposals or acts to a child under the age of sixteen. At the preliminary hearing, K.G. initially gave conflicting testimony about what happened at Mr. Hopper's house and ultimately admitted that she had lied about being in his bedroom. The prosecution then dismissed the charges without prejudice. By that point, Mr. Hopper had already spent six months in jail.

After the criminal case against him ended, Mr. Hopper sued the City of Cleveland, Oklahoma, and Officer Fenton under 42 U.S.C. § 1983. He alleged that Officer Fenton had violated his constitutional rights by unlawfully omitting from the affidavits information that would have vitiated probable cause. The district court granted summary judgment to both defendants because no constitutional violation had occurred. It held that probable cause would have existed even taking into account the facts Mr. Hopper says had to be included in the affidavits. We agree with the district court's analysis.

Probable cause does not require proof beyond a reasonable doubt or even a preponderance of the evidence. "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (internal quotation marks and citations omitted). Accordingly, we held in *Easton* that discrepancies in the statements of two young boys regarding an alleged

2

sexual assault did not vitiate probable cause:  the inconsistencies did "nothing to undermine the solid core of the children's statements regarding the . . . assault." *Easton v. City of Boulder*, 776 F.2d 1441, 1450 (10th Cir. 1985).

This case presents the same scenario as *Easton*:  even considering all of the facts Mr. Hopper emphasizes, the core of the girls' allegations would have sufficed to show a substantial probability that the crime had occurred.  As the district court found, L.M.'s and K.G.'s statements in their forensic interviews were largely consistent regarding their principal claim that Mr. Hopper had sexually assaulted K.G.:

> Both alleged that Hopper and KG were nude in Hopper's bedroom, on the bed, with Hopper on top of KG.  Both reported that he kissed KG down from her mouth and described conduct consistent with Hopper performing oral sex on KG.  Both described LM being in the bathroom and/or hallway at some point in time, and both indicated that LM watched Hopper have sex with KG on the bed.

Mr. Hopper doesn't contend that the affidavits failed to summarize this portion of the girls' accounts accurately.  Neither does he argue that the evidence described above fails to establish probable cause.  Instead, he says certain facts omitted from the affidavits would have undermined the girls' credibility and thus vitiated probable cause, but like the district court before us we don't see how.

First, Mr. Hopper points out that L.M.'s parents initially disbelieved her account because she had lied in the past.  But Officer Fenton wasn't obligated to ignore L.M.'s statements just because she had previously lied in another context.  After all, "[a] witness may be inaccurate, contradictory and even untruthful in some

3

respects and yet be entirely credible in the essentials of [her] testimony." *Id.* at 1450. As the district court observed, someone who has lied before can still be raped or witness a rape. So it is that modifying the affidavits to include the mother's initial disbelief of her daughter wouldn't have negated probable cause. And that is particularly the case when the affidavit would also have reflected the mother's ultimate decision to inform the police.

Second, Mr. Hopper says the affidavits should have disclosed that K.G. and L.M. initially leveled, but later recanted, the claim that he had also raped L.M. Under our precedent, however, probable cause survives this sort of contradictory statement regarding incidents separate from the alleged crime. In *Easton*, the alleged victim gave conflicting statements about the number of times he was assaulted, where the assaults occurred, and whether he had ever been in Mr. Easton's apartment. *Id.* at 1449. We nonetheless found that the core accusation remained intact because the two boys had consistently described an assault in the apartment complex's laundry room. *Id.* at 1450-51. For the same reason, the recanted allegation of the rape of L.M. would not have vitiated probable cause with respect to the rape of K.G.

Finally, Mr. Hopper highlights certain points on which the girls' accounts diverged. These include points both significant and minor. The most important discrepancies concern whether Mr. Hopper had shown the girls a pornographic movie, whether he had threatened them with a bloody knife, and whether he had touched L.M.'s breasts. There are more, but we think it sufficient to note that none bears on the central question whether he had sexually assaulted K.G. On that

4

fundamental issue, the girls' statements were consistent.  Accordingly, these discrepancies do not nullify probable cause.

We do not minimize the fact that Mr. Hopper has suffered severely due to the accusations against him.  But the fact also remains that, as the district court recognized, the Supreme Court has instructed us to extend qualified immunity to officers seeking to do their jobs unless they are "plainly incompetent or . . . knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge

5